Filed 9/20/13  In re Elias Q. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re ELIAS Q. et al., Persons Coming Under the Juvenile Court Law. | B244758 (Los Angeles County Super. Ct. No. CK94883) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>P.T.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Marguerite Downing, Judge.  Affirmed in part and reversed in part.  Motion to strike granted.

_____

Lori A. Fields, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Kimberly A. Roura, Senior Associate County Counsel, for Plaintiff and Respondent.

_____

P.T., mother of Elias Q. and A.S., appeals from the order entered after the juvenile court declared her children dependents of the court and made disposition findings. Mother challenges the jurisdiction determinations as to her children and the disposition orders removing the children from her care and placing Elias with his father. We affirm the order as to the jurisdiction determination under Welfare and Institutions Code section 300, subdivision (b)[1], based on Mother's marijuana use and the disposition findings, but reverse it with respect to the jurisdiction determinations under section 300, subdivisions (a) and (b), based on Mother's failure to protect the children from physical abuse by A.S.'s father.

### FACTUAL AND PROCEDURAL BACKGROUND

On August 6, 2012, the Department of Children and Family Services (DCFS) filed a section 300 petition against Mother as to Elias (then 12 years old) and A.S. (then nine months old). As relevant, the petition alleged under section 300, subdivisions (a) and (b), "The children['s] . . . mother[']s male companion . . ., father of the child A.S., physically abused the child Elias by striking the child's hand with a belt. Such physical abuse was excessive and caused the child unreasonable pain and suffering. The mother failed to protect the child when she knew of [A.S.'s] father's physical abuse of the child. Such physical abuse of the child by [A.S.'s] father and the mother's failure to protect the child endangers the child's physical health and safety, creates a detrimental home environment and places the child and the child's sibling [A.S.] at risk of physical harm, damage, danger, physical abuse and failure to protect." The petition further alleged under section 300, subdivision (b), that "mother . . . has a history of illicit drug use and is a current abuser of marijuana, which renders the mother unable to provide regular care and supervision of the child[ren]. On prior occasions, the mother was under the influence of marijuana while the children were in the mother's care and supervision. The mother's illicit drug use endangers the children's physical health

---

[1]     Statutory references are to the Welfare and Institutions Code.

2

and safety and creates a detrimental home environment, placing the children at risk of physical harm, damage and danger."

At a detention hearing that same date, the juvenile court found a prima facie case for detaining the children, no reasonable means to protect the children without removal and reasonable efforts to prevent or eliminate the need for removal. Mother was incarcerated and not present at the hearing. Elias was placed with a nonrelated extended family member, and A.S. was placed in foster care. The court ordered family reunification services and monitored visitation for Mother.

The juvenile court held a pretrial resolution conference on August 29, 2012. Mother, who no longer was incarcerated and present at the hearing, denied the petition's allegations. The court named a presumed father for Elias and an alleged father for A.S. It continued monitored visits for Mother and granted Elias's father unmonitored four-hour day visits. It scheduled a trial setting hearing for September 18, 2012 and an adjudication hearing for October 3, 2012.

Mother appeared at the hearing on September 18, 2012, as did Elias's father. A.S.'s father, who had been deported to Mexico, did not appear. The juvenile court gave DCFS discretion to release Elias to his father's care and A.S. to any appropriate relative.

At the October 3, 2012 adjudication hearing, Mother did not appear. Mother's counsel, who had attempted to call Mother but was unable to leave a voicemail because the mailbox was full, had "no idea" why Mother was not at the hearing. Counsel asked for a continuance, but the juvenile court denied it. The children's attorneys argued that the court should sustain the petition, as did counsel for DCFS. Mother's counsel argued the petition should be dismissed. Elias's father's counsel submitted as to the petition's allegations. After hearing argument from counsel and reviewing the exhibits submitted by DCFS and Elias's father, the court sustained the allegations under section 300, subdivisions (a) and (b), as to Mother's failure to protect Elias from physical abuse by A.S.'s father and the allegation under section 300, subdivision (b), as to Mother's marijuana use. The court declared the children dependents of the court and removed them from Mother's care. The court ordered Mother to participate in a drug treatment

3

program, plus after care, and individual counseling and granted her monitored visitation. The court placed Elias with his father under DCFS supervision, provided the father with family maintenance services and required him to participate in random and on-demand drug testing and a parenting program. The court placed A.S. with her paternal grandmother.[2] Mother filed a timely notice of appeal. (§ 395, subd. (a)(1); see *In re Tracy Z.* (1987) 195 Cal.App.3d 107, 112 [jurisdiction findings reviewable on appeal from the judgment following disposition].)

After Mother filed her appeal, on May 7, 2013, the juvenile court held a section 364 review hearing as to Elias. Mother was not present at the hearing and may have been in Mexico. The court released Elias to his father and terminated jurisdiction over Elias. On June 26, 2013, the court held a section 366.21, subdivision (e), hearing as to A.S. Mother did not appear. The court continued jurisdiction over A.S. and placement of A.S. with her paternal grandmother. It set a section 366.21, subdivision (f), hearing for December 18, 2013.

## DISCUSSION

1. *The Jurisdiction Determinations*

Mother contends substantial evidence does not support the jurisdiction determinations against her. We agree with Mother that substantial evidence does not support the jurisdiction determinations under section 300, subdivisions (a) and (b), as to her failure to protect the children from physical abuse of A.S.'s father. We, however, conclude that substantial evidence supports the jurisdiction determination under section 300, subdivision (b), based on Mother's marijuana use.

"The purpose of section 300 is 'to identify those children over whom the juvenile court may exercise its jurisdiction and adjudge dependents.' [Citation.]" (*In re A.O.* (2010) 185 Cal.App.4th 103, 110.) To declare a child a dependent under section 300, the juvenile court must find by a preponderance of the evidence that the allegations are true. (*In re Matthew S.* (1996) 41 Cal.App.4th 1311, 1318; see § 355, subd. (a).) "'[T]he

---

[2] Placement was with the paternal grandmother. The record at one point, however, refers to the person named as the paternal grandmother as the paternal aunt.

4

question under section 300 is whether circumstances *at the time of the hearing* subject the minor to the defined risk of harm.'" (*In re A.J.* (2011) 197 Cal.App.4th 1095, 1104.) We review the court's findings under section 300 for substantial evidence and will affirm the judgment based on those findings if they are supported by reasonable, credible evidence of solid value. (*Matthew S.*, at p. 1319.)

As noted, the sustained allegation under section 300, subdivisions (a) and (b), provides that A.S.'s father physically abused Elias "by striking the child's hand with a belt. Such physical abuse was excessive and caused the child unreasonable pain and suffering. The mother failed to protect the child when she knew of [A.S.'s] father's physical abuse of the child." Substantial evidence does not support the jurisdiction determination based on this allegation under either section 300, subdivision (a) or (b).

Section 300, subdivision (a), allows a dependency when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian. . . ." To sustain an allegation under section 300, subdivision (a), against a parent or guardian, the harm must be inflicted by the child's parent or guardian. (See *In re Roberto C.* (2012) 209 Cal.App.4th 1241, 1255.) The sustained allegation relates to physical abuse of Elias by A.S.'s father. It does not suggest that Mother physically abused Elias or A.S. such that jurisdiction would be proper under section 300, subdivision (a). DCFS does not attempt to support the jurisdiction determination based on any physical abuse by Mother of the children. Rather, DCFS suggests that jurisdiction was proper under section 300, subdivision (a), because the children were at risk of nonaccidental harm inflicted by A.S.'s father. Physical abuse by A.S.'s father, however, does not support a jurisdiction determination against Mother under section 300, subdivision (a). As a result, substantial evidence does not support the jurisdiction determination against Mother under section 300, subdivision (a).

Under section 300, subdivision (b), the court may adjudge a child a dependent of the court when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her

5

parent . . . to adequately supervise or protect the child, or the willful or negligent failure of the child's parent . . . to adequately supervise or protect the child from the conduct of the custodian with whom the child has been left, or by the willful or negligent failure of the parent . . . to provide the child with adequate food, clothing, shelter, or medical treatment, or by the inability of the parent or guardian to provide regular care for the child due to the parent's . . . mental illness, developmental disability, or substance abuse."

As noted, the sustained allegation related to a failure by Mother to protect Elias from physical abuse by A.S.'s father and a substantial risk of serious physical harm or illness to the children based on her failure to protect them in the future. No evidence suggests that A.S. was physically abused by her father, and she, therefore, did not suffer serious physical harm or illness. Although the evidence demonstrates that A.S.'s father hit Elias on the hand with a belt, as alleged, and also sometimes hit Elias on the hand with his hand and one time hit Elias on the "'butt'" with a belt, leaving Elias's "'butt'" red, DCFS presented no evidence that Elias had suffered serious physical harm or illness as a result of these incidents.

With respect to a substantial risk of the children suffering serious physical harm or illness based on A.S.'s father's physical abuse and Mother's failure to protect, a substantial risk requires ""''some reason to believe the acts may continue in the future." [Citation.]' [Citation.]" (*In re Nicholas B.* (2001) 88 Cal.App.4th 1126, 1134; see also *In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1394 ["*previous acts of neglect, standing alone, do not establish a substantial risk of harm; there must be some reason beyond mere speculation to believe they will reoccur*" (original italics)].) A.S.'s father was deported to Mexico in 2011 and confirmed by DCFS to be in Mexico during the dependency proceedings. No evidence exists that A.S.'s father planned to return to the United States. Mother reported that she had not been in contact with him since his deportation. Elias was living with his father and thus not susceptible to abuse by A.S.'s father. Although A.S. was living with her paternal grandmother, there were no allegations of physical abuse of A.S. by her father and no indications that she was at risk of serious physical harm or illness by her father, who was in Mexico. As a result, no

6

reason existed for the juvenile court to believe that A.S.'s father's physical abuse, and Mother's failure to protect, would continue in the future such that the children were at substantial risk of serious physical harm or illness.

The petition also alleged under section 300, subdivision (b), that "mother . . . has a history of illicit drug use and is a current abuser of marijuana, which renders the mother unable to provide regular care and supervision of the child. On prior occasions, the mother was under the influence of marijuana while the children were in the mother's care and supervision." Mother admitted that "she smokes marijuana as she has a medical marijuana card [since] 2004 for back pain, insomnia, and cramps. Mother stated that she smokes about once a week and she goes outside, separate from her children. Mother stated that she had DCFS involvement [in 2011] when child A.S. was born because she smoked marijuana while pregnant for a toothache." Mother acknowledged that she smoked marijuana during the last two months of her pregnancy with A.S. to "cure a toothache pain" and that she had marijuana in her blood when A.S. was born. A.S. also had a positive toxicology screen for marijuana at birth. Mother, who was 33 years old at the time DCFS filed the petition, began using marijuana at age 20 because she "'just like[s] it . . . .'" She had an arrest in 2009 for possession of a controlled substance and in 2012 for using or being under the influence of a controlled substance. According to Mother, her children were sleeping when she used marijuana. She never smoked marijuana in the children's presence. Elias saw her once through the window, and she told him she was smoking a cigarette.

Others reported Mother's marijuana use. A.S.'s paternal grandmother described Mother as a good mother but said "she thinks mother would not open the door for her because she may be doing drugs." The nonrelated extended family member with whom A.S. stayed during the dependency proceedings indicated that mother "is a 'good mom,' but she unfortunately started to use drugs, such as marijuana." A family friend also acknowledged mother's marijuana use and her medical marijuana card.

Elias reported, contrary to Mother's statements, "that mother smokes marijuana about once every 3 or 4 days. Child Elias stated that mother smokes outside in the patio

7

and he stays inside with [A.S.] in the room. Child Elias stated that mother 'starts acting funny' after she smokes . . . ." On another occasion Elias reported that Mother smoked, "'Most of the time, once a day. Sometimes she wouldn't smoke at all.'" Elias said he knew when Mother smoked marijuana, as "'[s]he would go outside and close all the windows. She would let [him] go outside, but she wouldn't let [him] get next to her. She would try to keep the fumes away from [him].'" Elias indicated, "'When [Mother] was high, she would laugh a lot and want to play with [him]. That's how I knew she was high.'" According to Elias, Mother cared for and supervised him and A.S. while under the influence of marijuana.

During the dependency proceedings, Mother failed to show for at least three on-demand drug tests. She was not receptive to DCFS's efforts to assist her in obtaining services, despite receiving referrals for parenting, individual counseling, substance abuse treatment and random drug testing. Mother was late or failed to appear for visits with her children. On one occasion, when Mother did appear for a visit, the monitor disclosed that Mother appeared to be under the influence. Mother failed to appear for the adjudication hearing and did not inform counsel of her whereabouts.

Under these circumstances, the juvenile court properly adjudged the children dependents of the court under section 300, subdivision (b), based on Mother's marijuana use. Mother has a long history of using the drug. She regularly, if not daily, treats various ailments with the drug. She used it for a toothache when she was pregnant with A.S., causing both her and the child to test positive for marijuana at the time of birth. Although Mother denied smoking in front of the children, Elias was well aware that Mother smoked, recognized that Mother's behavior changed after she smoked and reported that Mother cared for him and A.S., who was an infant, when Mother was under the influence. Mother had two prior drug-related arrests. During the dependency proceedings, she failed to drug test or enroll in a drug treatment program. She also reportedly came to a visit with her children while under the influence. She then did not appear at the adjudication hearing, without contacting counsel. This evidence sufficiently

8

supports the jurisdiction determination that the children faced a substantial risk of serious physical harm or illness as a result of Mother's abuse of marijuana.

2.     *The Disposition Findings*

Mother contends the juvenile court erred by removing the children from her care and placing Elias with his father.  We disagree.

Under section 361, subdivision (c)(1), in order to take a child from the physical custody of a parent with whom the child resides at the time the petition was initiated, the juvenile court must find by clear and convincing evidence, as relevant here, that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody."  We review a disposition finding under this provision for substantial evidence.  (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433.)

Substantial evidence supports the juvenile court's removal finding.  As noted, Mother had a significant history of marijuana use.  She had two drug-related arrests.  She smoked while pregnant with A.S.  Elias knew about Mother's regular marijuana use and noticed a change in her behavior when she smoked.  Mother cared for Elias and A.S., an infant, while under the influence.  In addition, Mother's conduct during the dependency proceedings demonstrates a substantial danger to the children if they were to remain in her care.  She did not drug test or enter a drug treatment program. She reportedly arrived at a visit with her children under the influence.  And she did not appear at adjudication.  As such, Mother's challenge to the removal of the children from her physical custody fails.

As to Elias's placement with his father, under section 361.2, subdivision (a), "[w]hen a court orders removal of a child pursuant to [s]ection 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of [s]ection 300, who desires to assume custody of the child.  If that parent requests custody,

9

the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child."

Contrary to Mother's argument, the juvenile court did not abuse its discretion by placing Elias with his father. (See *In re Nada R.* (2001) 89 Cal.App.4th 1166, 1179 ["reviewing court will not disturb a juvenile court's custody determination unless it '"exceeded the limits of legal discretion"'"].) Although Elias and his father had not seen each other for approximately eight years, and Mother and Elias's father had a contentious relationship when Elias was younger, Elias and father were reunited during the dependency proceedings. After the first visit between Elias and his father, DCFS reported that "[t]he visit was emotional and productive. Father . . . and . . . Elias hugged and cried in each other[']s arms. Father . . . brought toys and food for . . . Elias. . . . Elias was excited about meeting his father, and is looking forward to spending time with him and paternal relatives." DCFS later reported that Elias had visited with father. "The visits appear[] to be going well and the child has requested to be released to his [f]ather." Elias's father wanted custody of the child. Although Elias's father admitted to prior marijuana use and tested positive for marijuana once during the dependency proceedings before Elias was placed with him, he was "'willing to stop [smoking marijuana] to get [his] son back.'" The court ordered Elias's father to continue ongoing random and on-demand drug testing once Elias was in his care, complete a parenting class and make Elias available for DCFS to conduct unannounced home calls. Mother complains that Elias's father was reported to have had a criminal history. But no evidence exists that any criminal history supported a finding of detriment at the time of disposition such that the court should have precluded Elias from residing with his father. Accordingly, the court did not err by declining to find that placement of Elias with his father would be detrimental to his safety, protection, or physical or emotional well-being.[3]

---

[3] DCFS moved to strike the portion of its Respondent's Brief relating to placement of Elias with his father on the ground that it had opposed the placement at the time of disposition and would not take a position on appeal with respect to the placement. We

## DISPOSITION

The order is affirmed to the extent the juvenile court declared Mother's children dependents of the court under section 300, subdivision (b), based on Mother's marijuana use and ordered the children removed from Mother's care and Elias placed with his father. The order is reversed to the extent the court declared the children dependents of the court under section 300, subdivisions (a) and (b), based on Mother's failure to protect the children from physical abuse by A.S.'s father.

NOT TO BE PUBLISHED.

ROTHSCHILD, J.

We concur:

MALLANO, P. J.

CHANEY, J.

---

grant DCFS's motion to strike that portion of its Respondent's Brief. DCFS later recommended that the juvenile court terminate jurisdiction over Elias and release him to his father, which is the action the court took on May 7, 2013.